LISA MARIE GOODMASTER *v.* HENRY HOUSER ET AL.
(14390)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued December 3, 1992—decision released June 1, 1993

*Martin M. Rutchik,* with whom was *Kerin M. Woods,* for the appellant (plaintiff).

*David E. Schancupp,* for the appellees (defendants).

NORCOTT, J. The dispositive issue in this appeal is whether, in a negligence action where damages are sought for fear of future medical treatment and disability, the trial court improperly instructed the jury by failing to explain that the mere possibility of future

treatment was sufficient to merit an award of such damages.[1] The plaintiff, Lisa Marie Goodmaster, brought a negligence action against the defendants, Henry Houser (defendant) and Avis Rent a Car System, Inc. (Avis),[2] to recover damages sustained in a two car accident on June 11, 1985. The jury returned a verdict in favor of the plaintiff and the trial court rendered judgment in the amount of $59,500. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse and remand for a new trial.

The following facts are relevant to this appeal. On June 11, 1985, the plaintiff and the defendant were involved in a motor vehicle accident on Racebrook Road in Orange. At the time of the accident, the plaintiff was in a pickup truck proceeding in a line of traffic southbound on Racebrook Road. A vehicle owned by Avis and operated by the defendant was proceeding northbound, also on Racebrook Road.

The plaintiff and the defendant proffered substantially different versions of the accident. A witness for

---

[1] The plaintiff also claims that the trial court improperly: (1) admitted into evidence the report of Stanley Cohen, an oral surgeon selected by the defendant to examine the plaintiff, who was reported to have suffered a stroke on the day he was scheduled to testify; (2) failed to permit the plaintiff certain safeguards concerning the use of Cohen's report; (3) failed to grant the plaintiff additional time for closing argument; and (4) denied the plaintiff's motion to set aside the verdict as to damages. Because we reverse the judgment on the issue of the trial court's instructions on damages for fear of future medical treatment and disability and, therefore, remand the case for a new trial, we do not decide these issues. We do, however, reach the plaintiff's claim that the trial court erred in instructing the jury on comparative negligence because of the likelihood that this issue will arise again on retrial.

[2] The plaintiff's complaint alleges that at all relevant times the automobile operated by Houser was either rented or leased from Avis, which would make Avis liable pursuant to General Statutes § 14-154a. In the alternative, the complaint alleges that Houser operated the automobile as the agent, servant and employee of Avis.

the plaintiff testified that the traffic in front of the defendant in the northbound lane had been stopped waiting for a vehicle to turn left. According to the plaintiff and several other witnesses, the defendant was unable to stop his vehicle as he approached the traffic in front of him.[3] The plaintiff and another witness testified that the defendant had skidded sideways across the center line into the southbound lane of Racebrook Road and had collided with the driver's side of the plaintiff's pickup truck. The defendant's vehicle pushed the plaintiff's vehicle off the traveled portion of the road and into an iron pole approximately ten to fifteen feet off the side of the road. The plaintiff testified that she had attempted to avoid a collision by swerving to the side of the road, but was unable to do so before being struck by the defendant's vehicle.

The defendant testified that, as he had approached the stopped traffic in front of him, he had been confronted with the choice of turning right or left to avoid striking the vehicles in front of him. The defendant testified that he had believed he could avoid the collision by crossing the southbound lane and getting clear of the road area, which he proceeded to do. He testified that he had made it safely to the grassy area off the roadway but then had been hit behind the driver's seat by the plaintiff's vehicle. The defendant denied having made contact with any other vehicle while he had been in the travel portion of the roadway.

Joseph Dooley, the investigating officer, testified that his report indicated facts consistent with both the plaintiff's and the defendant's versions of the accident. He testified that there had been no skid marks attributable to the plaintiff's vehicle that would have indicated an application of the brakes or suggested that the plain-

---

[3] One witness testified that the defendant had been operating at a high rate of speed prior to the accident.

tiff's vehicle had been pushed to the right as a result of an impact. He stated, however, that in light of the final resting place of the plaintiff's vehicle, he believed that the plaintiff had taken evasive action prior to impact, by either braking or turning her wheel. Dooley also testified that the defendant's vehicle had left seventy-eight feet of skid marks, indicating that the defendant had applied his brakes before the accident. Dooley could not determine with any certainty, however, whether the vehicles first had come in contact while they were on the roadway or on the grassy area off the road.

The plaintiff testified that as a result of the accident she suffered injury to her knees, right arm, head, face, legs and neck, causing her to have limited mobility and frequent pain and headaches. The testimony of Matthew Gagliardi, the plaintiff's treating physician, revealed that the plaintiff had suffered permanent partial disabilities to her cervical spine, lumbar spine, knees, left lower leg, right lower leg, and right arm as a result of the accident.[4]

The plaintiff also testified that one month after the accident she had begun having pain on the left side of her face near her jaw, as well as severe headaches and a clicking and popping when she opened her mouth. The plaintiff, as a result, had to be fitted with an oral appliance that she wore continuously for over two years.

---

[4] Willard Greenwalt, an orthopedic surgeon who examined the plaintiff on behalf of the defendants, testified that his review of the report of the emergency room, where the plaintiff was taken following the accident, indicated that the plaintiff had suffered a contusion above the left eye and was thought to have suffered multiple contusions, but that all X rays indicated that there were no fractures. Greenwalt further testified that he was unable to identify any abnormality in the plaintiff's temporomandibular joints, cervical spine or lumbar spine. Greenwalt concluded that the plaintiff might have sustained a permanent partial disability in her neck, lower back, wrist and knees, although as to her wrist and knees, he was unable to ascertain whether the plaintiff's symptoms were attributable to preexisting conditions.

The plaintiff later underwent a surgical procedure on her jaw, after which her jaw had to be wired shut with a splint for a period of time, during which she had been limited to a liquid diet. Casper Burke, an oral surgeon who had reviewed the plaintiff's medical records, testified that the plaintiff had sustained a temporomandibular joint (TMJ) injury in the accident.[5]

The defendant and Avis disputed the causal relationship between the motor vehicle accident and the plaintiff's TMJ injury and requested that the plaintiff be examined by Stanley Cohen, a dental surgeon from New York. The day before he was scheduled to testify, Cohen suffered a stroke. His report was therefore admitted into evidence pursuant to General Statutes § 52-174 (a).[6] The report, admitted over the plaintiff's objection, expressed the opinion that the plaintiff's den-

---

[5] The reports of several orthodontists and oral surgeons who examined the plaintiff with respect to her jaw problems gave conflicting testimony as to causation. Several reports were unable to state whether the plaintiff's TMJ dysfunction was caused by the accident.

[6] General Statutes § 52-174 (a) provides: "In all actions for the recovery of damages for personal injuries or death, (1) if a physician, dentist, chiropractor, osteopath, natureopath, podiatrist, professional engineer or land surveyor has died prior to the trial of the action, or (2) if a physician, dentist, chiropractor, osteopath, nautreopath, podiatrist, professional engineer or land surveyor is physically or mentally disabled at the time of the trial of the action to such an extent that he is no longer actively engaged in the practice of his profession, the party desiring to offer into evidence the written records and reports of the physician, dentist, chiropractor, natureopath, osteopath or podiatrist concerning the patient who suffered the injuries or death and the reports and scale drawings of the professional engineer or land surveyor concerning matter relevant to the circumstances under which the injuries or death was sustained shall apply to the court in which the action is pending for permission to introduce the evidence. Notice of the application shall be served on the adverse party in the same manner as any other pleading. The court to which the application is made shall determine whether the person is disabled to the extent that he cannot testify in person in the action. Upon the court finding that the person is so disabled, the matters shall be admissible in evidence as a business entry in accordance with the provisions of section 52-180 when offered by any party in the trial of the action."

tal condition was not causally related to the automobile accident and that there was no evidence of TMJ syndrome or myofacial pain disorder.

The jury returned a verdict in favor of the plaintiff, awarding her damages in the amount of $70,000 but finding her 15 percent contributorily negligent. The trial court thereafter rendered judgment in the amount of $59,500. The plaintiff moved to set aside the verdict as to damages, which motion was denied by the court. The plaintiff then brought this appeal.

I

The plaintiff claims that the trial court's instructions to the jury on damages for the fear of future disability as an element of mental suffering improperly required the jury to find that it was reasonably probable, rather than merely possible, that future disability would occur. We agree that the trial court's instruction on this issue failed adequately to guide the jury to a correct application of the law, and for that reason we remand for a new trial.

Testimony was elicited at trial regarding the possible future effects of the plaintiff's TMJ injury. Burke testified that additional surgery to correct the plaintiff's TMJ injury was recommended. This surgery would expose the plaintiff to the risk of paralysis of a facial nerve, which could interfere with her ability to smile and to move her forehead and eyes, and could result in a droop eye. The surgery would also pose a risk of infection, which could cause numbness of the face up to the cheekbones.

The plaintiff testified that she had been advised of the risks inherent in any future surgery and that she was afraid of surgery and the related risks. The plaintiff also testified that she was afraid of excessive weight loss and dehydration if surgery required her jaw to be

wired shut, feared being hospitalized, and was "scared to death" about the risk of disability posed by the TMJ surgery.

At trial, the plaintiff requested that the following instruction be given to the jury on damages for fear of future disability: "In this case you have heard testimony from the plaintiff of her concern for future medical treatment and disability. If you should find that these facts are proven to you, then the plaintiff is entitled to a recovery for the fear of future illness or disability and her anxiety over the future consequences of her injury. The anxiety over the future consequences of her injury such as loss of teeth or future surgery is an element of mental suffering that you can consider in determining her entitlement to damages. In order for you to consider her anxiety, *it need not be proven to you beyond a reasonable doubt that such occurrence will take place, but the mere possibility of such an occurrence will entitle her to a recovery.* Likewise you can consider whether there is evidence of an increased susceptibility to a disability as an element of damages."

The trial court gave the following instruction to the jury on this issue: "Now also in this case you heard evidence from the plaintiff of her concern for future medical treatment and disability. If you should find that these facts are proven to you, then the plaintiff is entitled to recovery for fear of the future illness or disability and her anxiety over the future consequences of her injury, the anxiety over the future consequences of her injury such as future surgery is an element of mental suffering that . . . you can consider in determining her entitlement to damages. Mental suffering is a proper element of damages to physical suffering. It's just as proper as the physical suffering, when it is accompanied by a physical injury, and when it is a natural and proximate consequence of the physical injury."

The plaintiff contends that the trial court failed to include an instruction alerting the jury to the proper standard of proof to apply to the plaintiff's claim for damages for fear of possible future medical treatment or disability.[7] The plaintiff argues that the only reference to a standard of proof in the court's instructions concerning damages occurred in that portion that stated: "She's entitled to recover all such damages that resulted or will in the future with reasonable probability result from the negligence of the defendant if you so find." The plaintiff argues that, when the court next instructed that the plaintiff was also entitled to recover damages for fear of future disability or medical treatment "if [the jury] should find that these facts are proven," without designating a standard of proof, it impermissibly misled the jury to believe that it must find a reasonable probability of the future treatment or disability actually occurring in order to award damages for the present anxiety suffered therefrom. The plaintiff maintains, therefore, that this instruction was insufficient to guide the jury to a correct award of damages.

In assessing the adequacy of a charge to the jury, we consider the charge in its entirety, and judge it by its total effect rather than by its individual component parts. *Van Steensburg* v. *Lawrence & Memorial Hospitals,* 194 Conn. 500, 507, 481 A.2d 750 (1984). We consider whether the instructions are sufficiently correct in law, adapted to the issues and ample for the guid-

---

[7] The plaintiff claims that the court failed to give the charge as requested. We recognize, however, that the trial court is under no obligation to charge exactly as a party requests, but may incorporate the substance of the request to charge in its own language. *Goodman* v. *Norwalk Jewish Center, Inc.,* 145 Conn. 146, 150, 139 A.2d 812 (1958); *Drummond* v. *Hussey,* 24 Conn. App. 247, 249, 588 A.2d 223 (1991). We therefore understand the plaintiff's claim to be that the instruction given by the court was legally inadequate to guide the jury because it failed to indicate the proper standard of proof.

ance of the jury. *Hall* v. *Burns,* 213 Conn. 446, 482, 569 A.2d 10 (1990); *Grecki* v. *New Britain,* 174 Conn. 200, 203, 384 A.2d 372 (1978); *Mack* v. *Perzanowski,* 172 Conn. 310, 313, 374 A.2d 236 (1977); *Nally* v. *Charbonneau,* 169 Conn. 50, 55–56, 362 A.2d 494 (1975). The charge must give the jurors a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and must be suited to guide them in the determination of those issues. *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 566, 562 A.2d 1100 (1989); *Nally* v. *Charbonneau,* supra. The test is whether the charge as a whole fairly presented the case to the jury so that no injustice was done under established rules of law. *Hall* v. *Burns,* supra; *Van Steensburg* v. *Lawrence & Memorial Hospitals,* supra.

An improper instruction on the burden of proof may so mislead the jury as to be potentially harmful to one of the parties and therefore may amount to reversible error. See *Alaimo* v. *Royer,* 188 Conn. 36, 40, 448 A. 207 (1982); *Potts* v. *Buckley,* 97 Conn. 174, 178, 115 A. 726 (1922); see also *LeCount* v. *Farrand,* 118 Conn. 210, 213, 171 A. 623 (1934). A jury instruction that fails to set forth a standard against which the jury could properly measure damages is also improper. *Dombroski* v. *Active Automobile Exchange, Inc.,* 103 Conn. 759, 131 A. 404 (1925); *Meyer* v. *Basta,* 102 Conn. 144, 147, 128 A. 32 (1925). "The court must state the rule of damages to be applied to the particular facts of the case . . . and the charge must cover all elements of a reasonably possible recovery." W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 75, p. 90.

We have held that a plaintiff may recover for the fear of future medical treatment and disability, as distinguished from a recovery for the future disability itself, even if there is only a possibility that such future treatment or disability will take place. *Petriello* v. *Kalman,*

215 Conn. 377, 389–91, 576 A.2d 474 (1990); *Figlar* v. *Gordon,* 133 Conn. 577, 585, 53 A.2d 645 (1947). This rule of damages is "based on the unremarkable proposition that a danger of future injury is 'a present fact and the jury [is] entitled to take into consideration the anxiety resulting therefrom.' " *Petriello* v. *Kalman,* supra, 389. In *Petriello* we stated that " ' "[a]nxiety about a completely fictitious or imagined consequence, having no reasonable basis, is not a recoverable element." ' " Id., 390. We held, however, that evidence of a less than 16 percent chance of a future disability was sufficient to establish a reasonable basis for the plaintiff's fear, and that recovery for the fear associated with the future consequences of an injury was proper even if there was only a *possibility* that the feared consequence would later develop. Id., 391.

In this case, the charge to the jury failed in its primary purpose "to assist the jury in applying the law correctly to the facts which they might find to be established." *Vita* v. *McLaughlin,* 158 Conn. 75, 77, 255 A.2d 848 (1969). Throughout the court's instruction on damages, the jurors were informed that the burden of proof was on the plaintiff to prove the elements of damages by a preponderance of the evidence and they were told repeatedly that the plaintiff was entitled to recover for all injuries or losses that were a reasonably probable consequence of the accident. When discussing the plaintiff's need for medical and dental care in the future, the court instructed that the plaintiff could recover such expenses as "will be reasonably necessary in the future . . . what they will cost with reasonable probability." Immediately before the court instructed the jury on fear of future disability, it explained that the plaintiff is "entitled to recover all such damages that resulted or will in the future *with reasonable probability* result from the negligence of the defendant if you so find." (Emphasis added.) Each of these instructions was correct.

The trial court then proceeded to instruct the jury as to the plaintiff's fear of future medical treatment and disability, *"if you should find that these facts are proven to you,* then the plaintiff is entitled to recovery for fear of the future illness or disability and her anxiety over the future consequences of her injury . . . ." This language, in the context of the immediately preceding charge, could easily have been interpreted by the jury to mean that the facts of the need for future surgery and the risks involved had to have been proven, by a preponderance of the evidence, to be reasonably probable. By failing to instruct the jury that the plaintiff could recover for the anxiety reasonably associated with the future consequences of an injury, even if there is only a possibility that the feared consequence might occur, the trial court imposed a more rigorous standard of proof on the plaintiff than is required by law, and potentially prejudiced the plaintiff's right to recover lawful damages. We conclude that such an instruction was inadequate to guide the jury to a proper determination on the issue of damages. We therefore reverse the judgment of the trial court and remand the case for a new trial.

## II

The plaintiff also claims that the trial court improperly instructed the jury on comparative negligence when there was insufficient evidence produced by the defendant to support such a charge.[8] We reach this claim because of the likelihood that it will arise on retrial.

---

[8] The plaintiff also claims that even if the defendant was entitled to an instruction on contributory negligence, the instruction was insufficient to guide the jury because it failed to distinguish between the definitions of common law negligence and contributory negligence. Because the particular wording of this charge is not likely to arise again, we do not decide this issue.

Before the trial court charged the jury, the plaintiff filed a request that the court not charge on comparative negligence because the defendant had not offered evidence of any negligent conduct on the part of the plaintiff. This request notwithstanding, the trial court's charge included an instruction on comparative negligence.

The plaintiff claims that an instruction on comparative negligence was improper because, although the defendant and Avis had alleged contributory negligence in the pleadings, they had failed to present any evidence at trial that the plaintiff was negligent.[9] The plaintiff argues that because there was no basis in the evidence for a finding of contributory negligence on the part of the plaintiff, the issue should not have been submitted to the jury for consideration.

"The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. *Miles* v. *Sherman,* 116 Conn. 678, 683, 166 A. 250 (1933); *Fine* v. *Connecticut Co.,* 92 Conn. 626, 630–31, 103 A. 901 (1918)." *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982). The court should, however, submit to the jury all "issues as outlined by the pleadings and as reasonably supported by the evidence." 1 D. Wright, Connecticut Jury Instructions (2d Ed. 1970) § 2, p. 3; see *Faulkner* v. *Reid,* 176 Conn. 280, 281, 407 A.2d 958 (1978); *Mack* v. *Perzanowski,* supra, 313; *Drummond* v. *Hussey,* 24 Conn. App. 247, 248, 588 A.2d 223 (1991).

---

[9] The defendant and Avis have raised the point that there was no exception taken by the plaintiff as to the comparative negligence charge. This is of no consequence, however, since the trial court was put on notice by the plaintiff's written request not to charge on comparative negligence. If a written request covers the issue, an exception on that point is not necessary. *Mack* v. *Clinch,* 166 Conn. 295, 297, 348 A.2d 669 (1974); *Degnan* v. *Olson,* 136 Conn. 171, 172, 69 A.2d 642 (1949).

The defendant and Avis alleged in the answer facts supporting the special defense of contributory negligence. Specifically, they claimed that the plaintiff had failed to keep a proper lookout for other traffic, had failed to keep her vehicle under reasonable control, and had failed to apply the brakes or steer so as to avoid the accident. At trial the defendant and Avis elicited testimony that the investigating officer had not found any skid marks attributable to the plaintiff's vehicle to suggest either braking or being pushed to the right by another vehicle. The officer also testified that the collision could have occurred either on the roadway or on a grassy area to the side of the road. That officer, therefore, could not refute either the plaintiff's or the defendant's version of the accident.

The defendant testified that he had crossed the highway and had come to a full stop on the lawn alongside the road when the plaintiff's vehicle struck him. He further testified that the plaintiff could have avoided the accident if she had kept going straight. The plaintiff also testified that, had she turned her vehicle to the left instead of to the right, the collision could have been avoided. She further stated that the vehicles had collided both on the roadway and on the lawn adjacent to the roadway.

Our review of the evidence and of the pleadings leads us to conclude that the trial court properly charged the jury on comparative negligence. The testimony presented permitted a reasonable inference that the plaintiff had not exercised due care in operating her vehicle at the time of the accident.[10] We conclude, therefore,

---

[10] We acknowledge that General Statutes § 52-114 provides that "[i]n any action to recover damages for . . . negligently causing personal injury . . . it shall be presumed that such person . . . who was injured . . . was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defend-

that the plaintiff's claim that a charge on the issue of comparative negligence was not warranted by the evidence is without merit.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

ants, *and the burden of proving such contributory negligence shall rest upon the defendant* . . . ." (Emphasis added.) This statute would require a finding that the plaintiff acted in a reasonable manner in the absence of sufficient evidence to the contrary. However, "[t]he fact that General Statutes § 52-114 allocates the burden of proof on the issue of the plaintiff's due care to the defendant does not change the substantive law that the plaintiff had a duty to use such care." *Bergmann* v. *Newton Buying Corporation,* 17 Conn. App. 268, 272, 551 A.2d 1277 (1989). The presumption created by § 52-114 operates only in the absence of sufficient evidence, but once evidence of the plaintiff's negligence is admitted, whether the defendant has sustained the burden of proof is properly a matter for the jury. See *Anderson* v. *Litchfield,* 4 Conn. App. 24, 28, 492 A.2d 210 (1985).